# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

FEI CAO,

    *Plaintiff*,

  v.

HuaQing, meng nan, Baaniem, OUKPANE, AllegoYuky, Kkick, Aiwen chen, Shaheyi, Magtippl, Yiwang1688, Yangch shop, Glaric, Pandoulala, JunHongLiu, HEATO, YAAHEO, Fiehseos, DYKay, iFriends, JIMYAUQIN, FYeang, DeQinShangMao, PogairLLE STORE, Niushao-shop, NiMoWen, peixunshangmao, FACECOI US, yizhengchang, HavenKeep, HongHeShop, Jixinggaozhaodeal, xuananqing , YuFurture, AiMai, Vintaic US, xuxiteshangmao, ZhiRongShop, XinXiangShiCheng-US, DENGXUS, Chongjinghejidong, xianlianmoshangmaodian (gerenduziqiye), LSC sotre, Fun Share Official , MAEUS, MZYFDD, yuduguanmeizhuangxiuyouxiangongsi, Sumitongtwo, Microbio, VividTrees, tuiii, Vitalou, pretty local, Artisticc, Love yourself A, Epiicenterr, WoBeiTa, Radiant Glow Care Shop, LFXD C, Timurex, all category, HC FAFA, SkinWhisper, FeiMuKe, Lumessence, Jaysuing Cosmic Glow, BaLaBaKang, Jaysuing Charm, Feuaxzgf, JKY Goodies, Beauty and Makeup, RadiantEra, XiaoH, Yinqiang E -commerce Co. Ltd, SweatBloom, FlexAuraGlowCraft, RenXiang, Zhangping, zimaoyiIHGAB, fengzishangmaoYTU, EJWQWQE, ActiveGlam, Xinhaotao, Kelly Bro, Kuluoluowm, Smart Car & electronic, ZHNYLAN, Dlrvadru, YaingHUS, Rwyyau Beauty and Home, XEOVHV Beauty Care, Ppgorl Store, duanjumei, Sopick, Kuayialo, Sculpt, shenlei, Yorklili, FurryNest & Co., WEQWS, Balance Store, Shronknie, Reyetez, RAJPATTIE NARAIN, Xinfanbaihuo, BAXIAN, Jiamengjia, JIESMALLE, Leanna, MENGF, ZHANG ZHANCHUN, JINDONGJI, SSKFHGI, Koru Collective, HomeGoods. Plus, Onelix, Momobako, VividNest Creations, Baorden, lankeVK, Abetb,

    *Defendants*.

Civil Action No:_____

1

## COMPLAINT

Plaintiff FEI CAO ("Plaintiff") hereby files this action against HuaQing, meng nan, Baaniem, OUKPANE, AllegoYuky, Kkick, Aiwen chen, Shaheyi, Magtippl, Yiwang1688, Yangch shop, Glaric, Pandoulala, JunHongLiu, HEATO, YAAHEO, Fiehseos, DYKay, iFriends, JIMYAUQIN, FYeang, DeQinShangMao, PogairLLE STORE, Niushao-shop, NiMoWen, peixunshangmao, FACECOI US, yizhengchang, HavenKeep, HongHeShop, Jixinggaozhaodeal, xuananqing , YuFurture, AiMai, Vintaic US, xuxiteshangmao, ZhiRongShop, XinXiangShiCheng-US, DENGXUS, Chongjinghejidong, xianlianmoshangmaodian (gerenduziqiye), LSC sotre, Fun Share Official , MAEUS, MZYFDD, yuduguanmeizhuangxiuyouxiangongsi, Sumitongtwo, Microbio, VividTrees, tuiii, Vitalou, pretty local, Artisticc, Love yourself A, Epiicenterr, WoBeiTa, Radiant Glow Care Shop, LFXD C, Timurex, all category, HC FAFA, SkinWhisper, FeiMuKe, Lumessence, Jaysuing Cosmic Glow, BaLaBaKang, Jaysuing Charm, Feuaxzgf, JKY Goodies, Beauty and Makeup, RadiantEra, XiaoH, Yinqiang E -commerce Co. Ltd, SweatBloom, FlexAuraGlowCraft, RenXiang, Zhangping, zimaoyiIHGAB, fengzishangmaoYTU, EJWQWQE, ActiveGlam, Xinhaotao, Kelly Bro, Kuluoluowm, Smart Car & electronic, ZHNYLAN, Dlrvadru, YaingHUS, Rwyyau Beauty and Home, XEOVHV Beauty Care, Ppgorl Store, duanjumei, Sopick, Kuayialo, Sculpt, shenlei, Yorklili, FurryNest & Co., WEQWS, Balance Store, Shronknie, Reyetez, RAJPATTIE NARAIN, Xinfanbaihuo, BAXIAN, Jiamengjia, JIESMALLE, Leanna, MENGF, ZHANG ZHANCHUN, JINDONGJI, SSKFHGI, Koru Collective, HomeGoods. Plus, Onelix, Momobako, VividNest Creations, Baorden, lankeVK, Abetb, identified in the caption and in Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**INTRODUCTION**

1. This action is brought by Plaintiff to combat the unauthorized reproduction, distribution, and sale of products bearing copies, derivatives, and colorable imitations of Plaintiff's federally registered copyrighted artwork titled "Natural Hair Dye", Registration No. VAu 1-532-438 ("Plaintiff's Copyrighted Artwork"). Plaintiff's copyright is valid, subsisting, unrevoked, unchallenged, and uncancelled.

2. Defendants operate numerous e-commerce storefronts through which they advertise, market, offer for sale, and sell products that unlawfully reproduce, copy, display, and/or incorporate Plaintiff's Copyrighted Artwork without authorization. Defendants attempt to hide their identities, obscure the extent of their activities, and evade liability by using multiple seller aliases, false registration information, and overlapping design elements and product listings. The similarities among the infringing products and storefronts demonstrate that Defendants' unlawful conduct arises out of the same transaction, occurrence, or series of transactions or occurrences.

3. Plaintiff brings this action to stop Defendants' systematic, pervasive copyright infringement and to protect consumers from being misled into purchasing unauthorized, infringing products. Defendants' unlawful actions have caused and continue to cause Plaintiff irreparable harm, including loss of control over the distribution and integrity of Plaintiff's Copyrighted Artwork, dilution of its value, diversion of legitimate sales, and damage to Plaintiff's reputation and goodwill. Plaintiff seeks injunctive and monetary relief to halt Defendants' ongoing infringement and to hold them accountable for the harm caused.

**JURISDICTION AND VENUE**

4. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Copyright Act, 17 U.S.C. § 101, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. This Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Georgia, through their fully interactive e-commerce stores operating under the seller aliases ("Seller Aliases") identified above.

6. Specifically, Defendants purposefully availed themselves to do business with Georgia residents by operating one or more interactive e-commerce stores, through which Georgia residents can purchase infringing products bearing Plaintiff's federally registered copyrighted artwork. Each of the Defendants has targeted sales from Georgia residents by operating online stores that offer shipping to the United States, including Georgia, accept payment in U.S. dollars, and, on information and belief, has sold products that infringe Plaintiff's copyrighted artwork. Each of the Defendants has committed tortious acts in Georgia, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in Georgia.

**THE PARTIES**

*Plaintiff*

7. Plaintiff is an individual residing in Foshan, China.

8. Plaintiff is the owner of all rights, title, and interest in the federally registered copyrighted artwork with Registration Number. VAu 1-532-438, titled "Natural Hair Dye" ("Plaintiff's Copyrighted Artwork"). The registration is valid, subsisting, unrevoked, unchallenged, and uncancelled.

9. A true and correct copy of Plaintiff's copyright registration certificate is attached hereto as **Exhibit 1**.

*Defendants*

10. Defendants are individuals, partnerships and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified above. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

11. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases identified above. in a previously related case, Defendants provided declarations stating that they are under common control, asserting that the infringing actions are jointly undertaken and coordinated. Therefore, these Defendants are properly joined under Federal Rule of Civil Procedure 20, as their unlawful activities arise from the same transaction, occurrence, or series of transactions or occurrences.

**DEFENDANTS' UNLAWFUL CONDUCTS**

12. The success and commercial appeal of Plaintiff's Copyrighted Artwork, and products embodying that artwork, have resulted in significant unauthorized copying and infringement. Plaintiff has identified numerous e-commerce stores offering infringing products on online marketplace platforms such as Amazon.com, Walmart.com and Temu.com, including the e-commerce stores operating under the Seller Aliases in in Schedule A attached hereto. The Seller Aliases target consumers throughout the United States, including Georgia and in this Judicial District.

13.     According to a U.S. Customs and Border Protection (CBP) report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. Intellectual Property Rights Seizure Statistics, Fiscal Year 2021, U.S. Customs and Border Protection (attached hereto as **Exhibit 2**). Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China. *Id*.

14.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." See Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT' L L.&BUS. 157, 186 (2020) (attached hereto as **Exhibit 3**); see also report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) (attached hereto as **Exhibit 4**) and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. Ex. 4 at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." Ex. 3 at pp. 186-187.

15. On information and belief, Defendants have targeted sales to Georgia residents by setting up and operating e-commerce stores that target United States consumers, including Georgia, using one or more Seller Aliases, offer shipping to the United States, including Georgia, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold infringing products to residents of Georgia.

16. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online merchants. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use. reproduce, distribute, display, or create derivative works based on Plaintiff's Copyrighted Artwork, and none of the Defendants are authorized sellers of products bearing Plaintiff's Copyrighted Artwork.

17. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling infringing products. Such seller alias registration patterns are one of many common tactics used by e-commerce store

operators like Defendants to conceal their identities and the full scope and interworking of their infringing and counterfeiting operation, and to avoid being shut down.

18. Furthermore, e-commerce stores operating under the Seller Aliases often share unique identifiers such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, infringing products sold by the Seller Aliases bear similar irregularities, suggesting that the infringing products were from a common source and that Defendants are likely interrelated.

19. E-commerce store operators like Defendants are in constant communication with each other via Chinese social media apps such as QQ and WeChat, and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

20. Infringers and counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

21. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used, reproduced, distributed, publicly displayed, and prepared derivative works based on Plaintiff's Copyrighted Artwork in connection with the advertisement, distribution, offering for sale, and sale of infringing products into the United States and Georgia over the Internet.

22. Defendants' unauthorized exploitation of Plaintiff's Copyrighted Artwork – including the reproduction, distribution, display, and creation of derivative works in connection with the advertising, offering for sale, and sale of infringing products into the United States, including Georgia – is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I - COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*)

23. Plaintiff repeats and incorporates by reference herein the allegations contained in the above paragraphs of this Complaint.

24. Plaintiff's Copyrighted Artwork has significant value and has been produced and created at considerable expense.

25. At all relevant times, Plaintiff has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including Plaintiff's Copyrighted Artwork and derivative works. Plaintiff's Copyrighted Artwork is the subject of valid Copyright Registration Certificates issued by the Register of Copyrights. *See* **Exhibit 1**.

26. Each Defendant, without the permission or consent of Plaintiff, has sold and continues to sell online infringing copies and derivative works of Plaintiff's Copyrighted

Artwork. Each Defendant has violated Plaintiff's exclusive rights of reproduction and distribution. Each Defendant's actions constitute infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. § 101 *et seq*.).

27. The foregoing acts of infringement constitute a collective enterprise involving shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of the Plaintiff.

28. As a result of each Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504 and to Plaintiff's attorneys' fees and costs pursuant to 17 U.S.C. §505.

29. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyrights and ordering that each Defendant destroy all unauthorized copies.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1) Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be permanently enjoined and restrained from the following actions. Given that Defendants operate online storefronts and have the ability to control their product listings and sales activities, they have the capacity to comply with the proposed injunctive relief without undue burden:

   a. Reproducing, distributing, publicly displaying, and preparing derivative works based upon Plaintiff's Copyrighted Artwork;

10

  b. making, using, offering to sell, selling, and importing any products not authorized by Plaintiff;

  c. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

  d. aiding, abetting, contributing to, or otherwise assisting anyone in infringing Plaintiff's copyrights in Plaintiff's Copyrighted Artwork.

2) Directing that Defendants deliver for destruction all products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of any of Plaintiff's Copyrighted Artwork.

3) Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, online marketplaces, and other third parties who are in active concert or participation with Defendants shall, within two (2) business days of receipt of an Order entered by this Court:

  a. Locate all accounts connected to Defendants;

  b. Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

  c. Transfer to Plaintiff all funds restrained in such accounts up to the amount of any monetary relief awarded to Plaintiff by this Court within ten (10) business days of receipt of such Order.

4) Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings and loan

associations, other financial institutions, payment processors, and online marketplaces, with whom such newly identified accounts are maintained, to carry out the following activities:

    a.   Locate all accounts connected to Defendants;

    b.   Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

    c.   Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of this Order.

5) Awarding Plaintiff statutory damages based on Defendants' willful copyright infringement, pursuant to 17 U.S.C. § 504(c)(2), in an amount of $150,000 per infringed work, per Defendant;

6) Alternatively, should the Court not award Plaintiff statutory damages, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's Copyrighted Artwork as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

7) Awarding Plaintiff its reasonable attorneys' fees and costs; and

8) Awarding Plaintiff any and all other relief that this Court deems just and proper.

November 24, 2025

                                     Respectfully submitted,

                                     /s/ Andrew J. Palmer
                                     Andrew J. Palmer
                                     Palmer Law Group, P.A.
                                     401 E Las Olas Blvd, Suite 1400
                                     Fort Lauderdale, FL 33301
                                     Phone: 954-771-7050
                                     ajpalmer@palmerlawgroup.com
                                     ***Attorney for Plaintiff***